[No. A032102. First Dist., Div. Four. Feb. 25, 1987.]

Conservatorship of the Person of WILLIAM BONES.
WILLIAM SCHWARTZMAN, as Conservator, etc., Petitioner and
Respondent, v.
WILLIAM BONES, Objector and Appellant.

■■■■■■■■■■■■

COUNSEL

James J. Haight, under appointment by the Court of Appeal, for Objector and Appellant.

James P. Botz, County Counsel, and Jill D. Golis, Deputy County Counsel, for Petitioner and Respondent.

OPINION

ANDERSON, P. J.—This is an appeal from an order subjecting appellant William Bones to involuntary postcertification treatment as a dangerous person under the Lanterman-Petris-Short Act, Welfare and Institutions Code sections 5000-5550 (hereafter LPA).[1] We hold that (1) the appeal should not be dismissed for mootness; (2) the trial court did not err in ordering appellant to testify; and (3) appellant waived any objection he may have had as a result of the assertedly self-incriminating tendency of his testimony.

## I. BACKGROUND

The LPA provides a multistaged procedure for the involuntary treatment of a person who, by reason of a mental disorder, is dangerous to others, dangerous to himself, or gravely disabled. (See Tieger & Kresser, *Civil Commitment in California: A Defense Perspective on the Operation of the Lanterman-Petris-Short Act* (1977) 28 Hastings L.J. 1407 (hereafter *Civil Commitment*).) The first stage is a "72-hour hold" for treatment and evaluation. (*Id.,* at p. 1412; §§ 5150, 5200, 5206, 5213.) Thereafter the subject may be certified for an additional 14 days of intensive treatment. (*Civil Commitment, supra,* at p. 1408; §§ 5250, 5251.) At the end of this period the subject may be confined for up to 180 additional days of "postcertification" treatment. (§ 5301.) Such further confinement may be ordered by the superior court on the ground, among others, that the subject has "made a serious threat of substantial physical harm upon the person of another after having been taken into custody, and ... as a result of mental disorder or mental defect, presents a demonstrated danger of inflicting substantial physical harm upon others" (§ 5304, subd. (a)(1).) The confinement may be extended for another 180 days by way of a further petition. (§ 5304, subd. (b).) In addition or as an alternative, a conservator may be appointed for a person who is "gravely disabled" due to mental disorder, and in connection with the conservatorship the subject may be placed in an appropriate facility. (*Civil Commitment, supra,* at p. 1410; §§ 5350, 5358.)

---

[1] All further statutory references are to the Welfare and Institutions Code.

The order under review granted a petition for extension of postcertification treatment filed in April 1985 by Dr. William Schwartzman of the Napa State Hospital, where appellant had already been under treatment for at least six months. The matter was called as a jury trial. Before the jury was impanelled county counsel moved for permission to call appellant as a witness. The court granted the motion. Appellant then testified before the jury, in critical part, that on several occasions while on his property near Sebastopol he had heard children's screams; that the screams emanated from a nearby house; that he believed children were being molested in the house; that he believed the molester or molesters should be killed or at least beaten; and that he would kill or beat them upon being released from the hospital if he found the molestation was continuing and the police failed to take appropriate action. Appellant testified that he had never reported the screams to the police. Although he claimed there were other witnesses present when the screaming was heard, he was unable to recall who they were. He stopped hearing the screams after being placed in the hospital, but he believed the reason for this was that the victims' bodies had been "stretched." He also testified about a small black box, operated by aliens, which was capable of controlling minds and had been used on occasion to control his mind.

Appellant's counsel moved for a mistrial on the ground that it was error to compel appellant to testify. The motion was denied. Thereupon appellant agreed to waive jury trial and to submit the matter to the court on the basis of his own testimony, the written reports of a psychologist and a psychiatrist, and the affidavits of two other professionals. The reports and affidavits indicated that appellant was evasive with counselors about whether he still heard the screams and that he continued to be convinced that a number of his neighbors were child molesters whom he should kill if the police did not take appropriate action. The court issued orders granting the petition and remanding appellant to the care of Napa State Hospital. ■(See fn 2) This appeal followed.[2]

## II. MOOTNESS

■ The order granting the petition expired 180 days after rendition, some 16 months before the opening brief was filed here. Arguably, therefore, the appeal is moot. However, the case presents a significant question which is likely to recur, namely, whether the subject of a postcertification petition

---

[2]We are told that a conservatorship has now been established for appellant. County counsel requests judicial notice of the conservatorship proceedings. The request is supported by nothing but the number of the superior court's file. We do not believe this fulfills the requesting party's obligation to furnish the court with "sufficient information to enable it to take judicial notice of the matter." (Evid. Code, § 453, subd. (b).) Accordingly, we deny the request. (See Evid. Code, § 456.)

under section 5303 may be required to testify at the trial on the petition. This issue would tend to evade appellate review if neglected due to mootness, because no order for postcertification treatment can extend beyond 180 days (§§ 5300, 5304) and every such order is therefore virtually certain to expire before an appeal can be determined. Accordingly we exercise our inherent discretion to determine the appeal. (See *Conservatorship of Baber* (1984) 153 Cal.App. 3d 542, 548 [200 Cal.Rptr. 262].)

### III. SELF-INCRIMINATION

#### A. *Privilege of Silence.*

As a general rule, no person may refuse to testify as a witness. (*People* v. *Whelchel* (1967) 255 Cal.App.2d 455, 460 [63 Cal.Rptr. 258]; see Evid. Code, § 911.) However, the federal Bill of Rights and the California Declaration of Rights both contain a ban on compulsory self-incrimination. (U.S. Const., 5th Amend; Cal. Const., art. I, § 15.) This ban is effectuated through "two separate and distinct testimonial privileges." (*Cramer* v. *Tyars* (1979) 23 Cal.3d 131, 137 [151 Cal.Rptr. 653, 588 P.2d 793].) First, a *criminal defendant* has "an absolute right not to be called as a witness and not to testify." (*Ibid.*; see Evid. Code, § 930.) Second, *any* witness in *any* proceeding has the right to refuse to answer questions which tend to subject him to criminal culpability. (*Cramer* v. *Tyars, supra*; see Evid. Code, § 940.)

Although appellant is not a criminal defendant, he claims a constitutional right to refuse to testify. He notes that the right to remain silent has been extended to some proceedings not denominated "criminal." (See *In re Gault* (1967) 387 U.S. 1, 44, 49, 55 [18 L.Ed.2d 527, 555-556, 558, 561] [juvenile delinquency proceedings; pretrial "confession" invalid unless minor knew of right not to speak].) However, we believe the question is governed by *Cramer* v. *Tyars, supra,* 23 Cal.3d 131, 137-138 . There the appellant was committed for one year as a mentally retarded person dangerous to himself or others. On appeal he contended that the trial court erred by examining him as a witness over his objection. The Supreme Court acknowledged his right not to answer incriminating questions, but held that he "did not have an absolute right, as does a defendant in a criminal action, not to be called as a witness and not to testify." (*Id.,* at p. 137.) The same conclusion has been reached with respect to other analogous proceedings. (*Conservatorship of Baber, supra,* 153 Cal.App.3d at p. 550 [appointment of conservator under LPA]; *People* v. *Whelchel, supra,* 255 Cal.App.2d 455 [civil narcotics commitment]; see *Conservatorship of Mitchell* (1981) 114 Cal.App.3d 606, 610, fn. 2 [170 Cal.Rptr. 759] [LPA conservatorship]; *People* v. *Henderson* (1981) 117 Cal.App.3d 740, 748 [172 Cal.Rptr. 858] [extension of mentally disordered sex offender (MDSO) commitment]; *In re*

*Watson* (1979) 91 Cal.App.3d 455, 460 [154 Cal.Rptr. 151]. We discern no material distinction between the proceedings here and those reviewed in the foregoing cases. ■ ■■■ Therefore, we must conclude that the state and federal Constitutions do not, of their own force, grant appellant a right not to testify.[3]

■ It is suggested, however, that the *statute* governing these proceedings incorporated all the procedural safeguards and privileges of a criminal prosecution. This premise rests on the declaration in section 5303 that postcertification proceedings shall be conducted "in accordance with constitutional guarantees of due process of law and the procedures required under Section 13 of Article I of the Constitution of the State of California." As worded when section 5303 was enacted, the cited section of the California Constitution enumerated various procedural safeguards guaranteed to criminal defendants and further provided in pertinent part as follows: "No person shall be twice put in jeopardy for the same offense; nor be compelled, in any criminal case, to be a witness against himself; nor be deprived of life, liberty, or property without due process of law . . . ." (Former Cal. Const., art. I, § 13.) In our view the reference to this provision in section 5303 was not intended to import the whole of constitutional criminal procedure into postcertification proceedings.

In 1974 the Declaration of Rights was substantially reorganized. Section 13 was repealed and its provisions were distributed among other sections of the Constitution. The guarantees against double jeopardy and self-incrimination migrated to article I, section 15, while the due process clause is now found at article I, section 7, subdivision (a). In *People* v. *Burnick* (1975) 14 Cal. 3d 306, 314, footnote 5 [121 Cal.Rptr. 488, 535 P.2d 352], the Supreme Court treated section 5303 as referring to section 7 of the current Declaration of Rights, and not to section 15.[4] The court thus indicated that the effect of section 5303 is merely to emphasize the applicability of due process principles and not to incorporate the whole panoply of criminal defense rights.

---

[3]In *Tyars* v. *Finner* (C.D.Cal. 1981) 518 F.Supp. 502, 509, reversed on other grounds (9th Cir. 1983) 709 F.2d 1274, a federal district court held that, contrary to the holding in *Cramer* v. *Tyars, supra,* the subject of commitment proceedings does have a constitutional right not to testify. That opinion cannot affect our decision, for we are bound by the holdings of our Supreme Court (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), while those of the lower federal courts are merely persuasive (*Debtor Reorganizers, Inc.* v. *State Bd. of Equalization* (1976) 58 Cal.App.3d 691, 696 [130 Cal.Rptr. 64]).

[4]The court quoted section 5303 as requiring the proceedings to be conducted " 'in accordance with constitutional guarantees of due process of law and the procedures required under Section 13 [now § 7, subd. (a)] of Article I of the Constitution of the State of California.' " (*Ibid.,* bracketed material in original.)

It may be suggested that this interpretation makes section 5303 tautological, since it is both obvious and well established that due process principles apply to proceedings of the type governed by section 5303. (See, e.g., *Specht v. Patterson* (1967) 386 U.S. 605, 608 [18 L.Ed.2d 326, 329, 87 S.Ct. 1209]; *Minnesota v. Probate Court* (1940) 309 U.S. 270, 275-277 [84 L.Ed. 744, 750-751, 60 S.Ct. 523, 126 A.L.R. 530]; *People v. Victor* (1965) 62 Cal.2d 280, 288 [42 Cal.Rptr. 199, 398 P.2d 391]; *Guardianship of Walters* (1951) 37 Cal.2d 239, 243 [231 P.2d 473]; *People v. Levy* (1957) 151 Cal.App.2d 460, 465 [311 P.2d 897].) The Legislature is entitled, however, to enact declaratory statutes. (See 1A Sutherland, Statutory Construction (4th ed. 1985) ch. 26, pp. 451-455.) In *People v. Henderson, supra,* 117 Cal.App.3d 740, 747-748 , a similar statutory reference to constitutional safeguards was held to be intended to codify judicial decisions extending certain of such safeguards—manifestly not including the right of silence—to MDSO proceedings.

■   In enacting the LPA the Legislature was deeply concerned with the procedural soundness and reliability of commitment proceedings; but it was equally concerned with another, sometimes conflicting interest—the treatment rights of the mentally disordered. (See *Civil Commitment, supra,* at p. 1407 [LPA represents "major attempt" to "strike a balance"].) A subcommittee report laments the "basic dilemma" which led to "a continuous debate over which is more important, 'civil liberties' or 'treatment' considerations." (Assem. Interim Com. on Ways & Means, Subcom. on Mental Health Services, The Dilemma on Mental Commitments in California: A Background Document (1966) p. 6.) The report makes numerous references to "due process of law." (E.g., *id.,* at pp. 7, 180.) Nowhere does it suggest that the Legislature favored the wholesale incorporation of criminal procedure—or the specific right not to testify—in civil commitment proceedings.

The trial court did not err in ruling that appellant could be called to testify in the petitioner's case in chief.

B.   *Incriminating Testimony.*

■   Appellant also contends that his testimony was self-incriminating and thus its admission was error whether or not he was properly required to take the witness stand.

This point is raised here for the first time. The trial court's attention was never drawn to any incriminating tendency appellant's testimony might have. Indeed no evidentiary objections of any kind were made. In appellant's opposition to the motion to call him as a witness, he asserted only that he should not have to testify at all. In fact, during argument on the motion for

mistrial counsel for appellant *disclaimed* any objection to the *tenor* of the testimony stating, "it's more not a question of self-incrimination but more a question of having to be a witness against himself."

The absence of a timely objection precludes consideration of the point urged. "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence, unless . . . [t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion . . . ." (Evid. Code, § 353; see *People* v. *Henderson, supra,* 117 Cal.App.3d 740, 745-746 [claim of privilege for first time on appeal waived].)

Nor was it established that the trial court would not have sustained a timely objection. (See *People* v. *Redmond* (1981) 29 Cal.3d 904, 909, 910 [176 Cal.Rptr. 780, 633 P.2d 976] [challenge to prosecutorial comments on exercise of Fourth and Fifth Amendment rights, not considered where timely objection could have cured harm].) This distinguishes the present case from *Cramer* v. *Tyars, supra,* 23 Cal.3d 131, 138 , in which the absence of objections to specific questions was excused because of the trial judge's expressed belief that the subject in commitment proceedings had *no* privilege against self-incrimination. (*Ibid.*) The trial judge here read aloud a passage from *Conservatorship of Baber, supra,* 153 Cal.App.3d 542, expressly noting the right not to give self-incriminating testimony.[5] Although some of the court's comments were ambiguous, there was no unequivocal indication that the court misunderstood the scope of the privilege or that it would have overruled a timely objection. The record simply does not establish futility but instead suggests that all participants in the trial believed that the incriminating tendency of the testimony, if any, was not an issue.[6] If some of the testimony was subject to exclusion on this ground, still there was no error

---

[5]The trial judge stated: "[I]n reading [*Conservatorship of Baber, supra,* at p. 550] it appears to the Court that that is controlling; however, they do state at page—I believe it's 551—that 'This holding does not in any way intimate that a prospective conservatee may be compelled to answer questions which may incriminate him in a criminal matter,' so they are talking about prospective conservatee but they are talking about the provisions of the Welfare and Institutions Code. And in this regard the results are somewhat similar, the purpose is similar, the sections are similar, and I think that the decision is applicable, and of course his right against self-incrimination is protected under the State Constitution because he can't be asked questions that would incriminate him in a criminal proceeding, and this is not a criminal proceeding. So the Court rules that he can be called as part of their case in chief in this matter."

[6]Aside from admissions of drug use and drunk driving, prosecutions for which were probably barred by the statute of limitations or double jeopardy, we are uncertain that any of appellant's testimony was incriminating. He offers the novel suggestion that his threats of violence could incriminate him in the event such violence occurs *in the future.* We question whether the potential use of evidence in a future prosecution for a future crime triggers the privilege against self-incrimination.

in failing to exclude it in the absence of some indication that the court was being asked to do so.

The order appealed from is affirmed.

Poché, J., and Channell, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 28, 1987.