[No. F043304. Fifth Dist. Mar. 24, 2004.]

In re LUIS C., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
LUIS C., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IA and IIA.

**COUNSEL**

Michael B. McPartland, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, and John G. McLean, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**VARTABEDIAN, Acting P. J.**—Luis C. appeals from an order extending his commitment to the California Youth Authority (Youth Authority) pursuant to Welfare and Institutions Code section 1800,[1] which permits further detention if the ward would be physically dangerous to the public because of a mental disorder. At trial, an expert testified that Luis suffered from pedophilia, a mental disorder, and that he presented a high risk to harm others if released because he had not completed the sex offender treatment program. The jury made the requisite findings, and the court ordered the extended commitment.[2]

On appeal Luis contends: (1) the extension of his commitment under section 1800 violated due process and equal protection because it is based on a constitutionally inadequate standard of dangerousness and because his commitment involves fewer procedural safeguards and can result in harsher treatment than a civil commitment for similarly situated adult offenders,[3] and (2) the court violated his Fifth Amendment rights when it refused to instruct the jury he had a right not to testify and no inference could be drawn from the fact that he did not. We hold that the standard of "physically dangerous to the public" required for commitment under section 1800 et seq. violates due process (*In re Howard N., supra*, 115 Cal.App.4th at p. 1138). While this holding is dispositive, because the additional question of whether the trial court erred in not instructing the jury with CALJIC No. 2.60 is a matter of first impression, we determine that instruction should have been given and publish our discussion on this latter subject.

## I.

## BACKGROUND

A. *Youth Authority Statutory Scheme**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] The extended commitment will expire March 30, 2004. However, the dispositive issue here is of continuing public concern and likely to recur. Thus, a ruling on the merits is appropriate. (See *In re Christina A.* (2001) 91 Cal.App.4th 1153, 1159 [111 Cal.Rptr.2d 310].)

[3] Luis did not challenge the constitutionality of the statutes in the trial court, so technically the issue is waived. (*People v. Saunders* (1993) 5 Cal.4th 580, 589–590 [20 Cal.Rptr.2d 638, 853 P.2d 1093].) However, for the sake of judicial efficiency and because our holding in *In re Howard N.* (2004) 115 Cal.App.4th 1134 [10 Cal.Rptr.3d 44] concludes that the statutory scheme violates due process, we address the merits.

*See footnote, *ante*, page 1397.

B. *Facts and Proceedings*

In 1999, 19-year-old Luis admitted an allegation that he had molested his younger sister for more than four years, which constituted the crime of continuous sexual abuse of a child (Pen. Code, § 288.5, subd. (a)). The juvenile court committed him to the Youth Authority for a maximum period of confinement of 16 years.

Under section 1769, subdivision (a), Luis was scheduled to be released from the Youth Authority on his 21st birthday on March 30, 2002. Based on the report of the Youth Authority Board (YAB), in December 2001, the Fresno County District Attorney filed a petition to extend Luis's commitment pursuant to section 1800 et seq.

The YAB had determined there was cause to believe that Luis would be physically dangerous to the public by reason of a mental disorder if discharged from the control of the Youth Authority. The bases for the determination were set forth in a six-page, single-spaced case report and a six-page, single-spaced psychological report. The reports noted that Luis suffered from pedophilia and schizoid personality disorder. The latter is characterized by caring little for social relationships, indifference to others, and a lack of remorse or guilt that would normally accompany a deed that causes harm to another person. In addition, he had not responded to treatment for the majority of his stay at the Youth Authority and required further treatment in a formal sex offender treatment program in order to have a viable relapse prevention plan and to safely transition into the community.

The juvenile court found the petition supported a finding of probable cause and set the matter for hearing. After a contested hearing, which included testimony from a treating psychologist expanding on the opinions set forth in the written reports, the court found probable cause to believe that Luis's discharge would be physically dangerous to the public because of his mental disorder or abnormality.

Luis requested a jury trial on the issue. Before trial commenced in January 2002, however, Luis agreed to accept a two-year extension of inpatient treatment until March 30, 2004, as recommended by the YAB. He further agreed to return to court in one year for a review and status hearing. A year later, Luis withdrew his waiver and requested a jury trial.

During the three-day trial, Luis's therapist and three Youth Authority counselors testified. Youth Authority psychologist Steven Herskovic, who treats sex offenders, found Luis to be at risk for harming others because of his diagnosis of pedophilia and the serious nature of his offense—his almost five-year history of molesting his sister by use of threats and force to intimidate and coerce her. In addition, Luis displayed other elements of an offender profile. He had briefly molested two of his sister's friends and had reported that he had been sexually abused himself and that he had engaged in animal torture. These elements needed to be addressed in therapy. Further, staff had reported that, in the past, Luis had been grooming a somewhat retarded ward to sexually act out, which supported the opinion that he was dangerous.

Other evidence established that he had been angry with his family for obtaining a restraining order against him and, in the past, had expressed a desire to kill them when he was released. Luis also showed signs of depression. According to Dr. Herskovic, individuals who are depressed or suicidal and who also have repressed anger can sometimes turn their anger toward others in some sort of violent act. On the other hand, Luis was a well-behaved ward who had never been disciplined while in custody. Recently, he had appeared motivated in treatment. However, he was in the early stages of the sex offender treatment program, which usually lasted at least 30 months.

Patrick Mayer, a correctional counselor with the Youth Authority assigned to the sex offender program, had Luis as one of his seven wards. He testified that Luis still showed little concern for his victim and did not understand why his family wanted no contact with him. Luis had a number of behavioral issues that still needed to be addressed before he could safely be released to the community.

Luis did not testify during the trial. Accordingly, he requested the court to instruct the jury with CALJIC No. 2.60, which explained that he had a constitutional right not to testify and that no inference could be drawn from his failure to testify. The court refused, finding that Luis did not have a constitutional right not to be called as a witness, so the instruction was inapplicable.

The jury found that Luis had a mental or physical defect, disorder, or abnormality and that by reason of such mental condition he represented a physical danger to the public within the meaning of section 1801.5. On those findings, the court extended his commitment until March 30, 2004.

## II.

## DISCUSSION

### A. *Unconstitutional Statutory Standard*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### B. *Instruction on Right Not to Testify*

Luis contends the court erred in refusing to instruct the jury that he had a constitutional right not to testify and that no inference could be drawn from his failure to testify. We address this issue to give guidance to trial courts in future cases.

In relevant part, section 1801.5 provides: "If a trial is ordered pursuant to Section 1801, the trial shall be by jury unless the right to a jury trial is personally waived by the person, after he or she has been fully advised of the constitutional rights being waived, and by the prosecuting attorney, in which case trial shall be by the court . . . . The court shall submit to the jury, or, at a court trial, the court shall answer, the question: Is the person physically dangerous to the public because of his or her mental or physical deficiency, disorder, or abnormality? . . . *The person shall be entitled to all rights guaranteed under the federal and state constitutions in criminal proceedings.* A unanimous jury verdict shall be required in any jury trial. As to either a court or a jury trial, the standard of proof shall be that of proof beyond a reasonable doubt." (Italics added.)

■ Here, the Legislature's words are clear and unambiguous; the person "is entitled to all rights guaranteed under the federal and state constitutions in criminal proceedings." A defendant in a criminal matter has an absolute right not to be called as a witness and not to testify. (U.S. Const., 5th Amend; Cal. Const., art. I, § 15; Evid. Code, § 930.) When a criminal defendant exercises the right not to testify, the court must instruct the jury not to draw an adverse inference from the defendant's failure to take the stand. (*Carter v. Kentucky* (1981) 450 U.S. 288, 300 [67 L.Ed.2d 241, 101 S.Ct. 1112]; *People v. Evans* (1998) 62 Cal.App.4th 186, 190–191 [72 Cal.Rptr.2d

---

[*]See footnote, *ante*, page 1397.

543].) ■ Under the plain language of section 1801.5, because Luis is entitled to all the rights guaranteed to a criminal defendant, he had the right not to testify at the extended-commitment trial and the court was obligated to instruct the jury with CALJIC No. 2.60 that he had that right and no inference could be drawn from the fact that he did not testify.

Several courts have construed similar language in the civil commitment statutory scheme for those found not guilty by reason of insanity and concluded that it did not make all rights guaranteed for criminal proceedings applicable in the extension proceedings. (See, e.g., *People v. Superior Court (Williams)* (1991) 233 Cal.App.3d 477 [284 Cal.Rptr. 601] (*Williams*), *People v. Powell* (2004) 114 Cal.App.4th 1153 [8 Cal.Rptr.3d 441], and cases cited therein.) In *Williams*, the court stated that although many constitutional protections relating to criminal proceedings are available in extension proceedings, the application of all such protections was not mandated by language that the person is " 'entitled to the rights guaranteed under the federal and state Constitutions for criminal proceedings.' " (*Williams, supra,* at p. 487, quoting Pen. Code, § 1026.5, former subd. (b)(5) [now subd. (b)(7)].) According to *Williams*, that phrase merely codified the application of constitutional protections to extension hearings mandated by judicial decision. It did not extend the protection of constitutional provisions that bear no relevant relationship to the proceedings. (*Williams, supra,* 233 Cal.App.3d at p. 488.)

In *People v. Haynie* (2004) 116 Cal.App.4th 1224 [11 Cal.Rptr.3d 163], we disagreed with the statement in *Williams* that the statutory language "merely codifies the application of constitutional protections to extension hearings mandated by judicial decision." (*Williams, supra,* 233 Cal.App.3d at p. 488.) We reasoned that such conclusion rendered the statutory declaration of rights surplusage and supplanted the legislative rights-inclusive language with a process whereby judges selected which rights would apply. If the Legislature did not intend that "all rights" apply, it—rather than the court—should specify which rights applied. Finally, that the courts had extended certain rights to commitment proceedings under constitutional principles did not prevent the Legislature from providing additional rights to those subjected to the proceedings. (*People v. Haynie, supra,* at p. 1229.)

For the same reasons, we conclude in this case that the trial court erred when it refused Luis's request to instruct the jury pursuant to CALJIC No. 2.60 that he had a right not to testify and that no adverse inference could be drawn from his decision not to testify.

## III.

## DISPOSITION

The judgment is reversed.

Buckley, J., and Cornell, J., concurred.