[No. G038394. Fourth Dist., Div. Three. Nov. 30, 2007.]

JOSHUA D., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Deborah A. Kwast, Public Defender, Thomas J. Havlena, Chief Deputy Public Defender, Kevin J. Phillips, Assistant Public Defender, Deborah Barnum and Martin F. Schwartz, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Tony Rackauckas, District Attorney, and Brian F. Fitzpatrick, Deputy District Attorney, for Real Party in Interest.

**OPINION**

**ARONSON, J.**—Joshua D. seeks writ relief from an order of the superior court compelling him to testify in proceedings initiated by the district attorney to extend his commitment in a juvenile facility because he poses a danger to the public based on an alleged mental illness. (See Welf. & Inst. Code, § 1800 et seq.; further statutory references are to this code unless specified otherwise.) Joshua invokes the constitutional prohibition against compelled testimony in criminal proceedings, but because commitment proceedings are essentially civil in nature, well-established authority requires that we reject this reasoning. Joshua also argues section 1801.5 affords him the right not to testify in these proceedings because it expressly extends to juveniles facing commitment "all rights guaranteed under the federal and state constitutions in criminal proceedings." We agree the plain language chosen by the Legislature includes not just some of the constitutional rights afforded in criminal proceedings, but "all" of them. We therefore grant the writ petition.

I

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant background is brief. The district attorney filed a petition pursuant to section 1800 to extend Joshua's detention in juvenile facilities for an additional two years, alleging the commitment was necessary because Joshua's mental illness posed a danger to the public.[1] On March 12, 2007, the superior court commenced a probable cause hearing on the petition. The district attorney called Joshua to testify at the hearing and, over his objection, the superior court required him to testify. The court continued the hearing to March 26, 2007, before Joshua completed his testimony.

In the meantime, Joshua petitioned for a writ of mandate, which we summarily denied. The California Supreme Court, however, granted review and transferred the matter with directions to issue an order to show cause why the petition should not be granted. We issued the order and, after briefing by the parties and oral argument, we now turn to the merits.

II

## DISCUSSION

A. *No Constitutional Right to Avoid Testifying at Juvenile Commitment Proceedings*

Joshua argues the constitutional prohibition on compelled testimony applies to preclude the district attorney from calling him as a witness in these proceedings. Under well-established precedent, we disagree.

---

[1] Section 1800 provides: "(a) Whenever the Division of Juvenile Facilities determines that the discharge of a person from the control of the division at the time required by Section 1766, 1769, 1770, 1770.1, or 1771, as applicable, would be physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality that causes the person to have serious difficulty controlling his or her dangerous behavior, the division, through its Chief Deputy Secretary for Juvenile Justice, shall request the prosecuting attorney to petition the committing court for an order directing that the person remain subject to the control of the division beyond that time. The petition shall be filed at least 90 days before the time of discharge otherwise required. The petition shall be accompanied by a written statement of the facts upon which the division bases its opinion that discharge from control of the division at the time stated would be physically dangerous to the public, but the petition may not be dismissed and an order may not be denied merely because of technical defects in the application. [¶] (b) The prosecuting attorney shall promptly notify the Division of Juvenile Facilities of a decision not to file a petition."

■ The Fifth Amendment to the United States Constitution and article I, section 15 of the California Constitution guarantee the privilege against self-incrimination. The privilege encompasses "two separate and distinct testimonial privileges . . . . In a *criminal* matter a defendant has an absolute right not to be called as a witness and not to testify. [Citations.] Further, in any proceeding, *civil or criminal,* a witness has the right to decline to answer questions which may tend to incriminate him in criminal activity [citation]." (*Cramer v. Tyars* (1979) 23 Cal.3d 131, 137 [151 Cal.Rptr. 653, 588 P.2d 793] (*Cramer*).)

■ The privilege of a criminal defendant not to testify has *not* been extended to civil committees. In *Allen v. Illinois* (1986) 478 U.S. 364, 374–375 [92 L.Ed.2d 296, 106 S.Ct. 2988], the United States Supreme Court held that the privilege did not apply to proceedings under the Illinois Sexually Dangerous Persons Act because the proceedings "were not 'criminal' within the meaning of the Fifth Amendment to the United States Constitution . . . ." (*Allen*, at p. 375.) In *Cramer,* the California Supreme Court held the privilege did not apply to the commitment proceedings there (see §§ 6500–6512) because "commitment of mentally retarded persons must be deemed essentially civil in nature." (*Cramer, supra,* 23 Cal.3d at p. 137.) ■ Our Supreme Court has concluded the extended commitment proceedings for juveniles under section 1800 et seq. are civil in nature. (*In re Howard N.* (2005) 35 Cal.4th 117, 122 [24 Cal.Rptr.3d 866, 106 P.3d 305].) It follows, therefore, that the constitutional right to refuse to testify does not apply.

## B. *Statutory Privilege Not to Testify at Commitment Proceedings*

■ The absence of a constitutional privilege not to testify in civil commitment proceedings does not, of course, prevent the Legislature from affording that right by statute. Joshua contends the Legislature did so by enacting section 1801.5. We are not the first court to consider this issue. (See *People v. Lopez* (2006) 137 Cal.App.4th 1099 [40 Cal.Rptr.3d 789] (*Lopez*) [concluding no such statutory right exists in § 1801.5]; but see *In re Luis C.* (2004) 116 Cal.App.4th 1397 [11 Cal.Rptr.3d 429] (*Luis C.*) [reaching contrary conclusion].) Before we address these decisions, we briefly review the commitment process the Legislature has established for offenders detained in juvenile facilities.

### 1. *The Juvenile Commitment Process Under Section 1800 et seq.*

■ Section 1801.5 provides for a trial on a district attorney's petition (see §§ 1800, 1800.5) to extend a juvenile offender's commitment to the Division

of Juvenile Facilities because he or she poses a danger arising from a mental or physical disorder. The purpose of the trial is to answer the question: "Is the person physically dangerous to the public because of his or her mental or physical deficiency, disorder, or abnormality which causes the person to have serious difficulty controlling his or her dangerous behavior[?]" (§ 1801.5.) The trial takes place only if the district attorney first demonstrates probable cause supporting commitment. (§ 1801.) If the court orders a trial and the trier of fact determines the person poses the requisite risk of harm, he may be detained for two years before the district attorney may seek to renew the commitment by another petition. (§ 1802.) Absent renewal, the authorities must discharge the person. (*Ibid.*)

2. *Rights Afforded by Section 1801.5, as Construed in* Luis C. *and* Lopez

■ Section 1801.5 affords juveniles facing commitment or recommitment enumerated rights that include a jury trial, a unanimous verdict, and proof of the necessity of commitment beyond a reasonable doubt. Additionally, section 1801.5 states "[t]he person shall be entitled to all rights guaranteed under the federal and state constitutions in criminal proceedings."[2] Finding this sentence "clear and unambiguous," the Fifth District Court of Appeal concluded in *Luis C.* that the Legislature's chosen language included the right of defendants in criminal proceedings not to be called as a witness. (*Luis C., supra*, 116 Cal.App.4th at p. 1402.) The court reasoned: "If the Legislature did not intend that 'all rights' apply, it—rather than the court—should specify which rights applied." (*Id.* at p. 1403.) ■ The Legislature amended section 1801.5 the following year to specify that a disorder warranting commitment must "cause[] the person to have serious difficulty controlling his [or her] dangerous behavior," a provision necessary to avoid violating substantive due process. (*In re Howard N., supra*, 35 Cal.4th at p. 136; see *Kansas v. Crane* (2002) 534 U.S. 407, 412–413 [151 L.Ed.2d 856, 122 S.Ct. 867]; *Kansas v. Hendricks* (1997) 521 U.S. 346, 360 [138 L.Ed.2d 501, 117 S.Ct. 2072].) But the Legislature did nothing to disturb *Luis C.*'s interpretation of the statute.

---

[2] In relevant part, section 1801.5 provides: "If a trial is ordered pursuant to [s]ection 1801, the trial shall be by jury unless the right to a jury trial is personally waived by the person, after he or she has been fully advised of the constitutional rights being waived, and by the prosecuting attorney, in which case trial shall be by the court. . . . The court shall submit to the jury, or, at a court trial, the court shall answer, the question: Is the person physically dangerous to the public because of his or her mental or physical deficiency, disorder, or abnormality which causes the person to have serious difficulty controlling his or her dangerous behavior[?] [¶] The court's previous order entered pursuant to [s]ection 1801 shall not be read to the jury, nor alluded to in the trial. The person shall be entitled to all rights guaranteed under the federal and state constitutions in criminal proceedings. A unanimous jury verdict shall be required in any jury trial. As to either a court or a jury trial, the standard of proof shall be that of proof beyond a reasonable doubt."

In 2006, however, Division Two of the Fourth District Court of Appeal disagreed with *Luis C.* (See *Lopez, supra,* 137 Cal.App.4th 1099.) In *Lopez,* the court considered an equal protection challenge raised by a defendant civilly committed as a mentally disordered offender (MDO). (Pen. Code, §§ 2970, 2972, subds. (a) & (c).) The defendant argued admission of his testimony in his MDO commitment hearing subjected him to disparate treatment compared to persons who enjoyed the right to refuse to testify under other commitment statutes.

Specifically, the defendant pointed to *Luis C.*'s interpretation of section 1801.5 and to another decision by the Fifth District Court of Appeal, *People v. Haynie* (2004) 116 Cal.App.4th 1224 [11 Cal.Rptr.3d 163] (*Haynie*), where the court analyzed the commitment proceedings under Penal Code section 1026.5 for persons found not guilty by reason of insanity (NGI). Then, as now, section 1026.5, subdivision (b)(7), provided that the potential NGI committee "shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings." In *Haynie,* the court concluded the statutory rights conferred by this language included the absolute right to decline to testify. (*Haynie, supra,* 116 Cal.App.4th at pp. 1228–1230.)

Rejecting *Haynie* and *Luis C.,* the *Lopez* court scuttled the premise of the defendant's equal protection argument. *Lopez* concluded the Legislature did not extend the right not to testify to juvenile or NGI civil committees, and it therefore followed that the Legislature did not single out MDO's for disparate treatment by failing to accord that right. (*Lopez, supra,* 137 Cal.App.4th at p. 1116.) *Lopez* confined its discussion to *Haynie* and did not separately address *Luis C.,* viewing the rationale of the Fifth District's two decisions as identical. (See *id.* at p. 1110.) *Lopez* did not address the distinction between the Legislature's grant of "all rights" to potential juvenile committees in section 1801.5 (see *Luis C., supra,* 116 Cal.App.4th at p. 1403) and the absence of similarly broad language in the NGI statute under consideration in *Haynie.* Against the backdrop of *Luis C.* and *Lopez,* we turn now to examine section 1801.5.

### 3. *Applicable Statutory Interpretation Principles*

■ Our task in examining any enactment "is to ascertain and effectuate legislative intent. [Citations.] We turn first to the words of the statute themselves, recognizing that 'they generally provide the most reliable indicator of legislative intent.' [Citations.] When the language of a statute is 'clear and unambiguous' and thus not reasonably susceptible of more than one meaning, ' " ' "there is no need for construction, and courts should not indulge in it." ' " ' [Citations.]" (*People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713]; see *In re Anthony C.* (2006) 138

Cal.App.4th 1493, 1510 [42 Cal.Rptr.3d 370] (*Anthony C.*) [section 1801.5 unambiguously includes prohibition against double jeopardy].) When considering the statutory language, we adhere to the maxim that " '[c]ourts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage.' [Citation.]" (*Reno v. Baird* (1998) 18 Cal.4th 640, 658 [76 Cal.Rptr.2d 499, 957 P.2d 1333].) Where the terms of a statute are plain and not absurd, a court may not presume a drafting error and thereby substitute its judgment for the Legislature's. (*People v. Castro* (1985) 38 Cal.3d 301, 310 & fn. 6 [211 Cal.Rptr. 719, 696 P.2d 111].) To do so would contravene our constitutional role, tread into the domain of a coequal branch, and inject intolerable uncertainty into the drafting and lawmaking process, since neither the Legislature nor the public could rely on a court to follow plain statutory language.

### 4. *Section 1801.5 Includes the Right Not to Testify*

■ We agree with *Luis C.* that the plain language employed by the Legislature in section 1801.5 requires the conclusion that juveniles facing commitment under that provision may decline to testify. As *Luis C.* observed, "the Legislature's words are clear and unambiguous; the person 'is entitled to all rights guaranteed under the federal and state constitutions in criminal proceedings.' " (*Luis C.*, *supra*, 116 Cal.App.4th at p. 1402.) Among the constitutional rights guaranteed in criminal proceedings is the defendant's absolute right not to be called as a witness. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.) This right is necessarily included in the rights afforded by section 1801.5 because the word "all" means "all" and not "some." The Legislature's chosen term leaves no room for judicial construction.

■ Like *Luis C.*, the Third District Court of Appeal in *Anthony C.* recently reached the same conclusion we reach today: "The language of section 1801.5 is clear and unambiguous." (*Anthony C.*, *supra*, 138 Cal.App.4th at p. 1510.) There, the court considered whether section 1801.5 incorporates into juvenile commitment proceedings the constitutional prohibition on double jeopardy. The court recognized the Legislature could not have intended jeopardy principles to bar the commitment trial itself, since it is not a renewed criminal prosecution and a bar would have the absurd effect of nullifying the very commitment process established by the Legislature. (*Anthony C.*, at p. 1511.) The court noted, however, that under the plain terms of section 1801.5, once a commitment trial commences, "*all* constitutional rights . . . come into play." (*Anthony C.*, at p. 1511, italics added.) Observing that "[t]he statute does not limit or qualify this guarantee in any way" (*ibid.*), the court concluded "[a] holding that those rights do not include double jeopardy [citation], would render the word 'all' meaningless." (*Ibid.*) Accordingly, the court applied jeopardy principles to bar retrial and ordered the

juvenile discharged where the prosecuting attorney failed to satisfy his evidentiary burden on the commitment petition. (*Id.* at pp. 1511–1512.)

According to the district attorney, *Anthony C.* stands for the proposition the term "all rights" in section 1801.5 is not as expansive as a literal reading would suggest and does not actually incorporate "all rights" because, in recognizing double jeopardy does not bar a juvenile commitment proceeding "in the first instance" (*Anthony C., supra,* 138 Cal.App.4th at p. 1511), the court demonstrated occasions exist where a constitutional right seemingly guaranteed by the broad statutory language does not apply.

The district attorney misconstrues the nature of double jeopardy. By definition, *double* jeopardy *never* applies in the first instance. A civil juvenile commitment proceeding is a trial in the first instance in its own right, distinct in kind from the earlier quasi-criminal juvenile jurisdiction hearing. The trials are aimed at resolving different questions. One adjudicates guilt and the other the juvenile's prospective dangerousness over a two-year period covered by a particular petition. Simply put, the "section 1800 hearing does not involve adjudication of the factual elements of a criminal-type offense as is present in a jurisdictional hearing to which jeopardy attaches." (*In re Steven S.* (1999) 76 Cal.App.4th 349, 353 [90 Cal.Rptr.2d 290]; accord, *Anthony C., supra,* 138 Cal.App.4th at p. 1511 [citing *Steven S.*].) Because jeopardy does not attach in criminal proceedings to bar later civil adjudication of a juvenile's dangerousness, there is no reason to read *Anthony C.* as adopting a selective incorporation of the "all rights" accorded in section 1801.5. Contrary to the district attorney's argument, we remain convinced that "all" means "all" in section 1801.5.

The manner in which the Legislature added the "all rights" language to section 1801.5 supports our conclusion the Legislature meant what it said when it employed this broad term. The Legislature added the final three sentences of section 1801.5 in 1984 following the decision in *People v. Superior Court (Vernal D.)* (1983) 142 Cal.App.3d 29 [190 Cal.Rptr. 721].[3] There, the court held the juvenile commitment scheme violated due process in two respects: first, it authorized commitment based on less than a unanimous jury verdict (*id.* at pp. 35–36), and second, section 1801.5 implied the civil preponderance of the evidence standard applied (*Vernal D.,* at p. 36,

---

[3] Those three sentences are: "The person shall be entitled to all rights guaranteed under the federal and state constitutions in criminal proceedings. A unanimous jury verdict shall be required in any jury trial. As to either a court or a jury trial, the standard of proof shall be that of proof beyond a reasonable doubt."

fn. 3). As the Supreme Court recognized in *In re Howard N.*, "[t]he Legislature promptly responded by amending the extended detention scheme to provide for proof beyond a reasonable doubt and a unanimous verdict." (*In re Howard N., supra,* 35 Cal.4th at p. 134.) Clearly, the last two sentences of the revised section 1801.5 accomplish this change. But what of the first of the three sentences, i.e., the one that includes the "all rights" language?

The Legislature was entitled, had it chosen to do so, to select language for the first sentence that merely restated the latter two for emphasis or clarity. The Legislature's choice of the word "all," however, forecloses this interpretation because the federal and state Constitutions guarantee more than just the due process rights of a unanimous verdict and proof beyond a reasonable doubt. Had the Legislature elected to leave out the word "all," some precedent would support the conclusion the remaining language only codified judicial decisions holding due process rights applicable to commitment proceedings. (Compare *Lopez, supra,* 137 Cal.App.4th at p. 1115, with *Haynie, supra,* 116 Cal.App.4th at p. 1230.)

But the Legislature charted a different course. We agree with *Anthony C.* that the Legislature's decision not to utilize the same language in section 1801.5 as it did in statutes governing other commitment proceedings is meaningful. "Since it did not [employ the same language], instead specifying that the defendant is entitled to 'all' constitutional rights in criminal proceedings, we must give the word 'all' its inclusive commonsense meaning." (*Anthony C., supra,* 138 Cal.App.4th at pp. 1513–1514.)

██ The Legislature is not constrained merely to enact the statutory version of a judicial holding when it amends a statute. True, the legislative history gives no inkling the Legislature intended to do more than codify *Vernal D.* when it amended section 1801.5 in 1984 (see *In re Howard N., supra,* 35 Cal.4th at p. 134 [quoting legislative committee analyses]), but the words the Legislature chooses are the best expression of its intent and we are bound by their plain meaning. (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 919 [129 Cal.Rptr.2d 811, 62 P.3d 54] [statute's "plain meaning controls" and obviates "resort to extrinsic sources to determine the Legislature's intent"].) ██ As noted above, moreover, the Legislature amended section 1801.5 in 2005 without countermanding *Luis C.* and "when . . . ' "a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction

and approves of it." [Citations.]' " (*People v. Meloney* (2003) 30 Cal.4th 1145, 1161 [135 Cal.Rptr.2d 602, 70 P.3d 1023].)

### 5. *We Decline to Follow* Lopez

The district attorney relies on *Lopez*, which we do not find persuasive because it did not address the "all rights" language in section 1801.5. *Lopez* relied on cases construing statutory language similar—but not identical—to section 1801.5. For example, in *People v. Henderson* (1981) 117 Cal.App.3d 740 [172 Cal.Rptr. 858], the defendant argued the law governing commitment of mentally disordered sex offenders (MDSO) entitled him to the privilege against self-incrimination. The defendant relied on then applicable section 6316.2, which provided: "The patient shall be entitled to the rights guaranteed under the Federal and State constitutions for criminal proceedings." This sentence is a verbatim antecedent to its current counterpart in section 1801.5, except that it omits the word "all."

The court in *Henderson* concluded simply that the asserted privilege against self-incrimination did not apply to the defendant's communications with hospital staff in that case because they were not inculpatory. (*People v. Henderson, supra*, 117 Cal.App.3d at p. 748.) In what is arguably dicta, *Henderson* reasoned further that former section 6316.2 codified in MDSO proceedings only those constitutional protections mandated by judicial decision, such as the right to a unanimous jury and the beyond a reasonable doubt standard, rather than the full panoply of rights afforded in criminal proceedings. (See *Henderson, supra*, 117 Cal.App.3d at p. 748, citing *People v. Burnick* (1975) 14 Cal.3d 306 [121 Cal.Rptr. 488, 535 P.2d 352] (*Burnick*) and *People v. Feagley* (1975) 14 Cal.3d 338 [121 Cal.Rptr. 509, 535 P.2d 373].)

As *Lopez* observed, a line of later cases, never repudiated by the Legislature, applied *Henderson*'s reasoning to identical statutory language in Penal Code section 1026.5, subdivision (b)(7), involving commitment proceedings for persons found NGI. (See *Lopez, supra*, 137 Cal.App.4th at p. 1115, citing *People v. Superior Court (Williams)* (1991) 233 Cal.App.3d 477 [284 Cal.Rptr. 601] [no double jeopardy bar to NGI proceedings]; see also *People v. Powell* (2004) 114 Cal.App.4th 1153, 1158 [8 Cal.Rptr.3d 441] [language in NGI commitment scheme does not mandate the right to personally waive jury trial].) But we find *Henderson* and its progeny inapt because none of those cases construed statutory formulations that included the word "all," and that makes all the difference.

*Lopez*'s reliance on *Conservatorship of Bones* (1987) 189 Cal.App.3d 1010 [234 Cal.Rptr. 724] (*Bones*) and *Burnick* is similarly distinguishable. *Bones* and *Burnick* interpreted section 5303, a provision of the general civil commitment statute, the Lanterman-Petris-Short (LPS) Act (§ 5000 et seq.), which allows for temporary commitment, after a hearing, of individuals who demonstrate a "danger of inflicting substantial physical harm upon others." (§ 5300, subd. (a).) Section 5303 provides the court shall conduct the commitment hearing "in accordance with constitutional guarantees of due process of law and the procedures required under [former] Section 13 of Article 1 of the Constitution of the State of California" (hereafter sometimes section 13). Plainly, this language is nothing like the language in section 1801.5. Nevertheless, *Lopez* found it relevant, as we explain below.

*Bones* observed that when section 5303 was enacted in 1967, California Constitution, article I, section 13 "enumerated various procedural safeguards guaranteed to criminal defendants and further provided in pertinent part as follows: 'No person shall be twice put in jeopardy for the same offense; nor be compelled, in any criminal case, to be a witness against himself; nor be deprived of life, liberty, or property without due process of law . . . .' " (*Bones, supra,* 189 Cal.App.3d at p. 1016.) In 1974, section 13 was repealed and its provisions were distributed among other sections of the Constitution. The guarantees against double jeopardy and self-incrimination migrated to article I, section 15, while the due process clause resurfaced in article I, section 7, subdivision (a). Noting that the Supreme Court in *Burnick* "treated section 5303 as referring to section 7 of the current Declaration of Rights, and not to section 15" (*Bones, supra,* 189 Cal.App.3d at p. 1016), *Bones* concluded "[t]he court thus indicated that the effect of section 5303 is merely to emphasize the applicability of due process principles and not to incorporate the whole panoply of criminal defense rights." (*Ibid.*) Consequently, *Bones* concluded section 5303 did not extend the right not to testify to individuals facing commitment under the LPS act.

*Lopez* found the holding in *Bones* significant because, "[s]eemingly, the reference in . . . section 5303 to the 'procedures required' under article I, section 13 would necessarily include the right not to testify." (*Lopez, supra,* 137 Cal.App.4th at p. 1112.) Because *Lopez* viewed *Bones*'s and *Burnick*'s reading of section 5303 as "nonliteral," the *Lopez* court apparently concluded nonliteral readings of other similar statutes were justified. (See *Lopez, supra,* 137 Cal.App.4th at p. 1115.) We cannot, however, subscribe to the notion that one "nonliteral" judicial reading—if it is against the plain language of a statute—deserves another. Section 1801.5 plainly accords to potential committees "all" constitutional rights afforded criminal defendants. The right not to testify is among those rights. We simply may not gainsay the Legislature's decision to extend "all rights" of constitutional dimension, including the right not to testify, to juveniles facing commitment under section 1801.5.

### 6. Whether the Right Not to Testify Applies at a Section 1801 Probable Cause Hearing

The district attorney contends that even if section 1801.5 affords a potential juvenile committee the right not to testify, that right does not arise until trial. The right does not apply at the earlier probable cause hearing, according to the district attorney, because that hearing is governed by section 1801, which does not enumerate the right and does not utilize section 1801.5's "all rights" language.[4] Additionally, because section 1801.5 begins with the limiting phrase, "*If* a trial is ordered pursuant to [s]ection 1801 . . ." (italics added) before describing the juvenile's rights, the district attorney argues those rights are limited to the trial stage of the commitment proceedings. We are not persuaded.

We may not read individual statutory provisions in the juvenile commitment scheme in isolation from one another. Rather, "statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323] (*Dyna-Med, Inc.*).) It would be absurd to conclude the Legislature intended to create a commitment process in which the juvenile could not be compelled to testify at trial, but which nevertheless encouraged a wasteful exercise at the probable cause stage extracting ultimately inadmissible testimony.

---

[4] Section 1801 provides, in full: "(a) If a petition is filed with the court for an order as provided in Section 1800 and, upon review, the court determines that the petition, on its face, supports a finding of probable cause, the court shall order that a hearing be held pursuant to subdivision (b). The court shall notify the person whose liberty is involved and, if the person is a minor, his or her parent or guardian (if that person can be reached, and, if not, the court shall appoint a person to act in the place of the parent or guardian) of the hearing, and shall afford the person an opportunity to appear at the hearing with the aid of counsel and the right to cross-examine experts or other witnesses upon whose information, opinion, or testimony the petition is based. The court shall inform the person named in the petition of his or her right of process to compel attendance of relevant witnesses and the production of relevant evidence. When the person is unable to provide his or her own counsel, the court shall appoint counsel to represent him or her. [¶] The probable cause hearing shall be held within 10 calendar days after the date the order is issued pursuant to this subdivision unless the person named in the petition waives this time. [¶] (b) At the probable cause hearing, the court shall receive evidence and determine whether there is probable cause to believe that discharge of the person would be physically dangerous to the public because of his or her mental or physical deficiency, disorder, or abnormality which causes the person to have serious difficulty controlling his or her dangerous behavior. If the court determines there is not probable cause, the court shall dismiss the petition and the person shall be discharged from the control of the authority at the time required by Section 1766, 1769, 1770, 1770.1, or 1771, as applicable. If the court determines there is probable cause, the court shall order that a trial be conducted to determine whether the person is physically dangerous to the public because of his or her mental or physical deficiency, disorder, or abnormality."

The Legislature's own example amending sections 1801 and 1801.5 demonstrates it has not viewed the boundary between the two as impermeable. As noted, the 1984 amendment to section 1801.5 codified the beyond a reasonable doubt standard for juvenile commitment trials. Until 1998, section 1801 did not specify that the standard for the court's initial determination on a commitment petition was probable cause. The Legislature's 1998 amendment clarified that the standard was probable cause, not beyond a reasonable doubt. As one committee report stated, "To the extent current case law can be interpreted to require both a court trial using a standard of proof beyond a reasonable doubt and then an additional jury trial with the same standard of proof, this bill would correct that problem." (Sen. Subcom. on Juvenile Justice, Analysis of Sen. Bill No. 2187 (1997–1998 Reg. Sess.) as amended Apr. 13, 1998, p. 7); see *In re Howard N.*, *supra*, 35 Cal.4th at p. 136.) The amendment, however, would not have been necessary if the bulwark the district attorney perceives between the two sections existed.

We agree with Joshua that the opening words of section 1801.5, "*If* a trial is ordered pursuant to Section 1801." (italics added), introduce the remainder of the sentence, i.e., "If a trial is ordered pursuant to Section 1801, the trial shall be by jury . . . ." Contrary to the district attorney's argument, the prefatory condition does not operate to limit the "all rights" sentence much later in the paragraph because, as discussed, section 1801.5 must be read together with section 1800 and it would be absurd to conclude the Legislature intended to authorize extraction of testimony at the probable cause hearing that would become inadmissible "[i]f a trial is ordered . . . ."

The district attorney argues absurd consequences would result if *all* the rights in section 1801.5 were deemed applicable to a probable cause hearing under section 1801. We agree, but this argument is a red herring. It *would* be absurd to conclude section 1801.5 engrafts the beyond a reasonable doubt standard into section 1801 when, since 1998, section 1801 specifies a probable cause standard. But precisely because the standard is specified in each section, the absurdity posited by the district attorney vanishes.[5] Similarly, section 1801 specifies a court trial, so there is no basis to conclude the jury right section 1801.5 affords is applicable at the probable cause stage. And *Anthony C.* dispensed with the notion double jeopardy applies before the commitment trial commences, since the trial adjudicates a different question

---

[5] We also note the district attorney's attempt to construct an absurdity flies in the face of section 1801.5's express designation of all constitutional rights guaranteed "in criminal proceedings." The defendant in a criminal proceeding is *not* entitled to the reasonable doubt standard at the preliminary hearing. (*People v. Davis* (1959) 175 Cal.App.2d 365, 367 [346 P.2d 248] [" 'The evidence necessary to justify an order holding a defendant to answer to the superior court is not subject to the same test as that before a trial jury in a criminal action, and reasonable or probable cause may be found for holding to answer although the evidence does not establish the defendant's guilt beyond a reasonable doubt' "].)

than the earlier criminal proceedings against the juvenile. (*Anthony C.*, *supra*, 138 Cal.App.4th at p. 1511.)

 Unlike the foregoing examples, however, no similarly sound and reasonable distinction exists to require divesting the juvenile of the right not to testify at the probable cause hearing. Doing so would create a patently wasteful and absurd process, which we conclude the Legislature did not intend. (*Dyna-Med, Inc.*, *supra*, 43 Cal.3d at p. 1387 ["Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation"].) Because the language the Legislature enacted in section 1801.5 clearly and unambiguously affords "all" constitutional rights to juveniles facing commitment, and because it would be nonsensical to allow the district attorney to extract ultimately inadmissible testimony from Joshua at his probable cause hearing, we grant Joshua's petition for a writ of mandate prohibiting the district attorney from calling Joshua as a witness.

## C. *Conclusion*

 We recognize sound policy reasons exist to deny potential civil committees the right to refuse to testify, which is not constitutionally required. (See *Cramer*, *supra*, 23 Cal.3d at p. 139 ["Reason and common sense suggest that it is appropriate . . . that a jury be permitted fully to observe the person sought to be committed, and to hear him speak and respond in order that it may make an informed judgment as to the level of his mental and intellectual functioning"].) On the other hand, the values underlying the privilege in the constitutional context amply support the policy choice to afford the right where the Legislature chooses to do so. (See *Murphy v. Waterfront Comm'n.* (1964) 378 U.S. 52, 55 [12 L.Ed.2d 678, 84 S.Ct. 1594] [the privilege not to testify "reflects many of our fundamental values and most noble aspirations: . . . our sense of fair play which dictates 'a fair state-individual balance by requiring the government to leave the individual alone until good cause is shown for disturbing him and by requiring the government in its contest with the individual to shoulder the entire load . . .' . . . ; [and] "our respect for the inviolability of the human personality and of the right of each individual 'to a private enclave where he may lead a private life . . .' . . ." (citations omitted)].) Where the Legislature has made a policy choice, using as here particularly clear and unambiguous language, we may not second-guess its determination. (See *Estate of Horman* (1971) 5 Cal.3d 62, 77 [95 Cal.Rptr. 433, 485 P.2d 785] ["Courts do not sit as super-legislatures to determine the wisdom, desirability or propriety of statutes enacted by the Legislature"].)

## III

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to (1) vacate its order granting the People's motion to compel Joshua D. to testify at the section 1801 probable cause hearing and (2) enter a new and different order denying the People's motion and striking any testimony already elicited from Joshua D.

Sills, P. J., and Fybel, J., concurred.