Filed 4/14/14  P. v. Thomas CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039417 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 78748) |
| v. | |
| FRANK HILL THOMAS, | |
| Defendant and Appellant. | |

Frank Hill Thomas appeals from the January 22, 2013 commitment order extending his involuntary commitment pursuant to Penal Code section 1026.5.[1]  The petition to extend his commitment was submitted to the court for decision.  He now asserts that the court issued its commitment order without any trial whatsoever and over his objections and without first judicially advising him and securing his express, personal waiver of his rights to a jury trial, confront and cross-examine witnesses, and present evidence on his own behalf.[2]  He also claims that the petition does not constitute

---

[1]    All further statutory references are to the Penal Code unless otherwise specified.

[2]    We note that the Supreme Court has granted review in the following involuntary commitment cases that present the issue whether the trial court prejudicially erred "by failing to advise defendant of his right to jury trial and obtain a personal waiver of that right": *People v. Tran* (S211329, rev. granted Aug. 14, 2013; *People v. Blackburn*,

1

substantial evidence supporting the commitment order. He maintains that, for all these reasons, this court must reverse the order.

We find that the record, viewed objectively, reflects that appellant's counsel, with appellant's assent, waived a jury and submitted the matter for decision by the court on appellant's behalf. We conclude that the submission for court decision was based on the documentary evidence underlying the petition, which appellant does not assert is insufficient to support the commitment order, and the submission constituted a court trial. In addition, we find, under the totality of circumstances, appellant voluntarily and knowingly waived his rights to confront and cross-examine adverse witnesses and to present evidence. Accordingly, we affirm the order.

I

*Procedural History*

On July 13, 2013, the government filed a petition for extended commitment pursuant to 1026.5, subdivision (b), against appellant. The petition stated that appellant "committed violations of [former] Penal Code Sections 288(b) and 12022.3(a)" on January 24, 1981. It alleged that appellant's current commitment would expire January 23, 2013 and, by reason of mental disease, defect or disorder, appellant "continues to represent a substantial danger of physical harm to others, and continues to be a person described in paragraph (1) of section 1026.5(b) of the Penal Code." It requested the court to extend his commitment for an additional two years. Subsequently, the following documents were filed under seal: the underlying Napa State Hospital request to file the petition, the affidavit of the Acting Medical Director of the hospital opining that appellant qualifies for an extension of commitment under section 1026.5, and the mental health report stating the evidence in support of such extension.

_____

(S211078, rev. granted Aug. 14, 2013); *People v. Fuquay* (S211076, rev. granted Aug. 14, 2013); *People v. Mortimer* (S211072, rev. granted Aug. 14, 2013).

2

On July 18, 2013, appellant's counsel waived formal arraignment on the petition on behalf of appellant and appellant did not personally appear. The court told appellant's counsel that "if [appellant] wishes to be present would you notify the Court and at that time we will re-arraign him in person."

Appellant did not appear for subsequent pretrial matters. He was represented by Deputy Public Defender Andrea Randisi, who waived his presence on his behalf.

On August 3, 2012, the court stated on the record: "[P]ursuant to our discussions the matter will be continued to August 31st. Apparently he's thinking about whether or not he wants to have a trial or agree to the extension."

On August 31, 2012, the court indicated that appellant "does want to challenge the extension request" and it continued the matter until September 21, 2012.

On September 21, 2012, the court "put the matter over to October 12th for setting" pursuant to the in-chambers discussion.

On October 12, 2012, the court continued the matter until October 19, 2012 "for status" pursuant to the in-chambers discussion.

On October 19, 2012, the court continued the matter until November 16, 2012 "for status" pursuant to the in-chambers discussion.

On November 16, 2012, pursuant to the in-chambers discussion, the court issued an order to produce for January 17, 2013, scheduled a hearing on any in limine motions for January 18, 2013 at 1:30 p.m., and set jury trial for January 22, 2013.

A written order to produce appellant, filed January 4, 2013, directed the Sheriff of Santa Clara County to transport appellant to the county by January 17, 2013.

A minute order for January 18, 2013, shows that "M. Street" appeared on behalf of appellant in the morning and the scheduled appearance at 1:30 p.m. was vacated.

On January 22, 2013, appellant was present in court and represented by Deputy Public Defender Malorie Street. Appellant's counsel told the court that appellant had

3

informed her on January 14, 2013 that he did *not* want a jury trial and he was satisfied with "the court reviewing the petition." She explained, however, that appellant wished to contest the extension on the ground that he had honored his NGI commitment and appellant "objects to the fact [a jury trial] was waived 31 years ago." Counsel stated that appellant "wanted a jury trial in the federal court and he believe[d] that the federal court should have heard his jury trial 31 years ago" and then she asked, "Is that accurate, Mr. Thomas?" Appellant replied "no" and said that it had happened "recently within the last four years" and indicated that the federal court wanted a filing fee from him.

Appellant's counsel tried to again explain her client's position. She indicated that appellant believed that the hospital had not fulfilled the original contract and he was asking to be released. The court then asked whether his counsel had "fairly state[d]" his feelings. Appellant answered "no" but his explanation is not entirely comprehensible. His grievance, as far as we can discern, it is that he did not have "a jury trial in the very beginning" "[w]hen [he] became a 1026." He complained that a couple of times he had been denied the right to have a jury trial, he had gone to the Supreme Court, and now he had "moved to federal court with it--."

The deputy district attorney and appellant's counsel agreed that the matter was being submitted for decision on the petition. The court stated that it had read the petition and, based on the petition, the court was satisfied beyond a reasonable doubt that the extension was appropriate and warranted and found the petition true. It ordered a two-year extension of appellant's commitment. Appellant's counsel asked the record to reflect that the extension of commitment was over appellant's objection and the court stated, "Noted."

4

## II

### *Discussion*

#### A. *Sufficiency of the Evidence*

Appellant now asserts that there is not substantial evidence supporting the order of commitment because the petition was not evidence. Citing section 1026.5, subdivision (b)(2), respondent asserts that the petition impliedly included the affidavit of the acting medical director of Napa State Hospital opining that appellant qualifies for an extension of commitment and the supporting mental health report that set forth the factual basis for an extension of appellant's commitment. We agree with respondent in light of the statutory language, especially since ascribing such a literal meaning to the court's and counsel's words would lead to an absurdity.

A person found not guilty of a felony by reason of insanity (NGI) and committed may have his original commitment extended under section 1026.5, subdivision (b), if the person "by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others." (§ 1026.5, subd. (b)(1).) A petition for extended commitment must "state the reasons for the extended commitment, *with accompanying affidavits specifying the factual basis* for believing that the person meets each of the requirements set forth in paragraph (1)." (§ 1026.5, subd. (b)(2), italics added.) Here, the factual basis was set forth in documentary evidence filed under seal. Appellant does not suggest that those documents constituted insufficient evidence to support an extension of his commitment. The submission of the petition for decision impliedly was a submission on that documentation and, accordingly, it constituted a trial, despite appellant's appellate protestations to the contrary. (Cf. *Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 604, 606.)

5

B. *Failure to Advise and Obtain Express, Personal Waiver of Right to Jury Trial*

1. *Statutory Duties*

Section 1026.5, subdivision (b)(3), provides in part: "When the petition is filed, the court shall advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial." Section 1026.5, subdivision (b)(4), states in pertinent part: "The court shall conduct a hearing on the petition for extended commitment. The trial shall be by jury unless waived by both the person and the prosecuting attorney."

Appellant contends the court failed to comply with its statutory duty to advise him of his right to a jury trial. Even assuming that the court erred by not giving the statutorily-required advisement regarding the right to jury trial (even though appellant waived his personal appearances through counsel before trial), any error must be regarded as harmless on this record. (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Appellant was represented by counsel who, we presume in the absence of any indication to the contrary, was competent, informed as to applicable constitutional and statutory law, and adequately advised appellant of his rights, including his right to a jury trial. (See *People v. Barrett* (2012) 54 Cal.4th 1081, 1105; *Conservatorship of John L.* (2010) 48 Cal.4th 131, 151-152.) Further, it may be inferred from the record that appellant knew he had a right to a jury trial.[3]

Appellant argues that the statutorily-required judicial advisement of the right to a jury trial implies the right to personally waive a jury trial. We disagree. While the statute requires a prospective committee ("the person") to waive a jury trial (§ 1026.5,

---

[3]     We also take judicial notice of appellant's appeals from prior orders of commitment (H036517, H034006) in which he challenged the lack of a jury trial. (See Evid. Code, §§ 452, subd. (d), 459.)

subd. (b)(4)), nothing in the statute precludes a represented person from waiving a jury trial through his or her counsel. The California Supreme Court has stated: "When a statutory right in a civil commitment scheme is at issue, the proposed conservatee [or committee] may waive the right through counsel if no statutory prohibition exists. (E.g., *People v. Rowell* (2005) 133 Cal.App.4th 447, 452–454 [in sexually violent predator recommitment proceeding, trial court properly accepted counsel's representation that client wanted court trial instead of jury trial]; *Mary K.*, *supra*, 234 Cal.App.3d at p. 271.)" (*Conservatorship of John L. supra*, 48 Cal.4th at p. 148.) The Legislature knows how to statutorily require a personal waiver (see Welf. & Inst. Code, § 1801.5 ["the trial shall be by jury unless the right to a jury trial is personally waived by the person"]; see also Cal. Const., art. I, § 16 ["A jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel"]), but it did not do so here.[4]

Appellant also claims that that the record does not support a presumption that appellant's counsel waived a jury trial in accordance with appellant's wishes. We again must disagree.

"Like all lawyers, the court-appointed attorney is obligated to keep her client fully informed about the proceedings at hand, to advise the client of his rights, and to vigorously advocate on his behalf. [Citations.] The attorney must also refrain from any act or representation that misleads the court. [Citations.]" (*Conservatorship of John L.*, *supra*, 48 Cal.4th at pp. 151-152.) "[I]n the absence of any contrary indication, the superior court may assume that an attorney is competent and fully communicates with the proposed conservatee about the entire proceeding. [Citations.]" (*Id.* at pp. 156-157.) As a general rule, "even though certain rights implicated in civil proceedings are substantial,

---

[4] We have no reason to believe that that the generally worded subdivision (b)(7) of section 1026.5 impliedly requires what subdivision (b)(3) of section 1026.5 does not.

7

they may be waived by an attorney with the client's express consent. [Citations.]" (*Id*. at p. 156.)

On the record before us, we have no basis for believing that counsel Street misrepresented what appellant had told her regarding his wishes. The record of submission indicates that appellant and his counsel were well aware that appellant could have a jury trial on the petition but appellant had specifically informed his counsel before the date of trial that he did not want a jury trial. Appellant did not dispute or contradict his counsel's representation to the court that appellant had stated that he did *not* want to have a jury trial on the pending petition. Appellant's gripes regarding the lack of jury trial, as voiced on January 22, 2013, did not concern the present petition and we do not agree with appellant's characterization of the record. Although he may have initially wanted a jury trial and the matter was set for a jury trial, he apparently changed his mind. Appellant disagreed with his counsel's explanations of his grievances but they clearly concerned past denials of jury trial. It cannot be fairly inferred from his comments that he wanted to go forward with a jury trial on the current petition. He expressed no objection to the submission of the matter by his counsel for decision by the court. Rather, he objected to the court's extension of his commitment.

Although appellant's counsel did not say the word "waive," she implicitly waived appellant's right of jury trial on his behalf consistent with his wishes by informing the court of appellant's desire to forgo a jury trial and have the court review the petition and submitting the matter for decision by the court. Even assuming arguendo that the statute requires either an express, personal waiver of the right to jury trial by the prospective committee or an explicit waiver of that right by the person's counsel, any statutory error in not obtaining such waiver must be regarded as harmless on the record before us. (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

8

2. *Alleged Violation of Due Process*

a. *Hicks v. Oklahoma*

Appellant argues that '[e]ven if [his] right to a jury trial is deemed to be purely statutory, the state's failure to comply with its own statutes and decisions violated [his] state and federal due process rights."  Citing *Hicks v. Oklahoma* (1980) 447 U.S. 343, 346-347 [100 S.Ct. 2227], appellant asserts that "a person has a due process right to compel the state to comply with its own procedures when depriving him of liberty."  Consequently, "his Due Process rights were violated due to abrogation of his state created liberty interest."

In *Hicks*, the defendant was sentenced to a mandatory 40-year prison term under a statute later determined be unconstitutional.  (*Hicks v. Oklahoma*, *supra*, 447 U.S. at p. 345.)  The state appellate court upheld his sentence on the ground that it was "within the range of punishment that could have been imposed in any event."  (*Ibid*., fn. omitted.)  The U.S. Supreme Court stated:  "Where . . . a State has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law.  The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion [citation], and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State.  [Citations.]"  (*Id*. at p. 346.)  The court held that, by affirming "the sentence imposed by the jury under the invalid mandatory statute," "the State deprived the petitioner of his liberty without due process of law."  (*Id*. at p. 347.)

*Hicks* does not aid appellant and is clearly distinguishable.  Appellant's commitment was not extended based upon a determination under a statute subsequently declared unconstitutional and then affirmed on appeal without any determination under a

9

valid statute.  Further, we have already concluded that appellant validly waived a jury trial through his counsel and submitted the matter to the court for determination.

Moreover, the scope of *Hicks* must be understood in the light of the U.S. Supreme Court's subsequent jurisprudence.  The Supreme Court has now made clear that even mandatory state law does not necessarily create a liberty interest.  (See e.g. *Sandin v. Conner* (1995) 515 U.S. 472, 477-484, 487 [115 S.Ct. 2293] [mandatory state prison regulations did not create a liberty interest protected by the federal due process that entitled an inmate, who was subjected to disciplinary segregation, to the procedural protections established in *Wolff v. McDonnell* (1974) 418 U.S. 539].)  Further, the existence of a state-created liberty interest does not dictate what process is due under the federal Constitution.  (See *Swarthout v. Cooke* (2011) 131 S.Ct. 859, 862-863 [although inmate had state-created liberty interest in parole release, federal due process did not compel application of California's "some evidence" rule of judicial review of parole denial].)

"[The U.S. Supreme Court has] long recognized that a 'mere error of state law' is not a denial of due process. [Citation.]  If the contrary were true, then 'every erroneous decision by a state court on state law would come [to this Court] as a federal constitutional question.' [Citations.]"  (*Engle v. Isaac* (1982) 456 U.S. 107, 121, fn. 21 [102 S.Ct. 1558]; see *Swarthout v. Cooke*, *supra*, 131 S.Ct. 863.)  Due process does not safeguard "the meticulous observance of state procedural prescriptions . . . ."  (*Rivera v. Illinois* (2009) 556 U.S. 148, 158 [129 S.Ct. 1446] ["Because peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution"].)  Thus, all the procedural requirements set forth in an involuntary commitment statute do not automatically become due process protections to which the prospective committee is entitled.  (Cf. *People v. Letner* (2010) 50 Cal.4th 99, 195 ["the violation of section 190.9,

10

subdivision (a)(1), [which requires all capital proceedings to be on the record in presence of court reporter] by itself, did not deprive defendants of a 'liberty interest' under *Hicks* . . . . [Citations.]"]; *People v. Rundle* (2008) 43 Cal.4th 76, 136 [statutes requiring a capital defendant's presence during the trial when evidence is taken "do not create a liberty interest for the benefit of defendants of the type involved in *Hicks.* [Citations.]"], disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22].)

The question whether due process was satisfied requires a different analysis.

b. *Procedural Due Process Protections*

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State [citation]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient [citation]." (*Kentucky Dept. of Corrections v. Thompson* (1989) 490 U.S. 454, 460 [109 S.Ct. 1904]; see *Swarthout v. Cooke*, *supra*, 131 S.Ct. at p. 861.) There is no doubt that appellant had a liberty interest in avoiding an extended commitment protected by procedural due process. (*Vitek v. Jones* (1980) 445 U.S. 480, 491-492 [100 S.Ct. 1254] [involuntary commitment to a mental hospital results in a massive curtailment of liberty that requires due process protection].) Fundamental fairness is the touchstone of such right to due process. (*Gagnon v. Scarpelli* (1973) 411 U.S. 778, 790 [93 S.Ct. 1756]; see *Lassiter v. Department of Social Services of Durham County, N.C.* (1981) 452 U.S. 18, 33 [101 S.Ct. 2153].)

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*. [Citations.]" (*Zinermon v. Burch* (1990) 494 U.S. 113, 125-126 [110 S.Ct. 975], fn. omitted.) The procedural due process demands fundamental fairness, especially with respect to the fact-finding procedures. (See *McKeiver v. Pennsylvania*

11

(1971) 403 U.S. 528, 543 [91 S.Ct. 1976] (plur. opn. of Blackmun, J.).) "[T]he quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)." (*Greenholtz v. Inmates of Nebraska Penal and Correctional Complex* (1979) 442 U.S. 1, 13 [99 S.Ct. 2100].)

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]" (*Mathews v. Eldridge* (1976) 424 U.S. 319, 335 [96 S.Ct. 893].) "At least to the extent protected by the Due Process Clause, the interest of a person subject to governmental action is in the accurate determination of the matters before the court, not in a result more favorable to him." (*Heller v. Doe by Doe* (1993) 509 U.S. 312, 332 [113 S.Ct. 2637].) In addition, "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions." (*Mathews v. Eldridge*, *supra*, 424 U.S. at p. 344.)

It is not clear that a jury trial, rather than a court trial, is necessary to safeguard against an erroneous deprivation of liberty in involuntary commitment proceedings. (See *U.S. v. Carta* (1st Cir. 2010) 592 F.3d 34, 37 [Fifth Amendment's due process clause did not require a jury trial to commit "sexually dangerous person" under federal law]; *United States v. Sahhar* (9th Cir. 1990) 917 F.2d 1197, 1206-1207, cert. den. (1991) 499 U.S. 963 [111 S.Ct. 1591] [Fifth Amendment's due process clause does not require a jury trial in federal civil commitment proceedings of an incompetent criminal defendant]; *McKeiver v. Pennsylvania*, *supra*, 403 U.S. at p. 543 (plur. opn. of Blackmun, J.) [a jury

12

trial is not a necessary element of the fundamental fairness guaranteed by the due process clause or an essential component of accurate factfinding], *id*. at p. 551 (conc. opn. of White, J.) [a jury is "not necessarily or even probably better at the job than the conscientious judge"]; *People v. Tilbury* (1991) 54 Cal.3d 56, 68-70 [due process does not require a jury to consider an insanity acquittee's application for placement in a community mental health program]; cf. *Allen v. Illinois* (1986) 478 U.S. 364, 375 [106 S.Ct. 2988] [Fourteenth Amendment's due process clause does not provide privilege against self-incrimination in civil commitment proceedings under Illinois Sexually Dangerous Persons Act; privilege is "not designed to enhance the reliability of the factfinding determination"].)  Even assuming that the right to due process compels a jury trial in involuntary commitment proceedings (see *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 230-231 [conservatorship]; *People v. Thomas* (1977) 19 Cal.3d 630, 644 [commitment of narcotics addict]; *People v. Feagley* (1975) 14 Cal.3d 338, 342, 350 [commitment of mentally disordered sex offender]; *In re Gary W.* (1971) 5 Cal.3d 296, 306-307 [extended detention of CYA ward]), section 1026.5, subdivision (b), satisfies any such due process requirement by providing for a right to jury trial.  As we have said, the record reflects that appellant decided not to have a jury trial on the pending petition and waived that right through his counsel.

As to any additional safeguards related to jury trial, we emphasize: " '(D)ue process is flexible and calls for such procedural protections as the particular situation demands.' *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)." (*Mathews v. Eldridge, supra,* 424 U.S. at p. 334; see *Moore v. Superior Court* (2010) 50 Cal.4th 802, 819.)  Appellant has not demonstrated that, in involuntary commitment proceedings, due process also gives a prospective committee who is represented by counsel the rights to receive a judicial advisement of the right to jury trial

13

and to have a court trial unless he or she personally waives the right to jury trial on the record.

We are unconvinced that due process compels such concomitant procedures. For one thing, the existence of a constitutional right does not always entail an associated right to a judicial advisement and express, personal waiver of that right. (Cf. *People v. Bradford* (1997) 14 Cal.4th 1005, 1052-1053, cert. denied (1997) 522 U.S. 953 [118 S.Ct. 377] [criminal defendant has no right to express, personal waiver of constitutional right to testify; a trial judge may safely assume that a nontestifying defendant is abiding by his counsel's trial strategy].) Second, in the absence of any contrary indication in the appellate record, a reviewing court must presume that counsel representing a prospective committee was knowledgeable about applicable law, she consulted with her client, she explained to the client his rights (including the right to jury trial) and legal options, she ascertained her client's wishes and accurately represented them to the court, and she competently safeguarded her client's interests.[5] (See *People v. Barrett* (2012) 54 Cal.4th 1081, 1105; *Conservatorship of John L.*, *supra*, 48 Cal.4th at pp. 151-152, 156-157; *Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564; cf. *People v. Carter* (2003) 30 Cal.4th 1166, 1211; *People v. Musselwhite* (1998) 17 Cal.4th 1216, 1260.)

"Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." (*Carey v. Piphus* (1978) 435 U.S. 247, 259 [98 S.Ct. 1042].) Where a prospective committee is represented by counsel and the record reflects that counsel is waiving a jury

---

[5]     Presumably, where a prospective committee is mentally incompetent, his counsel is not required to abide by his client's wishes and may validly waive jury trial over his client's objection. (See *People v. Powell* (2004) 114 Cal.App.4th 1153, 1156, 1158; see also *People v. Angeletakis* (1992) 5 Cal.App.4th 963, 970 ["due process does not include the right to be mentally competent during a commitment extension hearing"]; cf. *People v. Masterson* (1994) 8 Cal.4th 965, 969-974.)

trial on behalf of her client and consistent with her client's wishes, the "dictates of due process" do not additionally demand judicial advisement and the prospective committee's express, personal waiver of the right to jury trial to ensure the fundamental fairness or the accuracy or reliability of the proceeding.

C. *No Judicial Advisement and Express, Personal Waiver of Other Rights*

Appellant maintains that his extended commitment violated his state and federal constitutional and statutory rights to confront and cross-examine witnesses and present evidence of his own because he was committed without any trial and he was not advised of those rights and he did not knowingly and intelligently waive them.[6] He points to section 1026.5, subdivision (b)(7), which provides in part: "The person shall be entitled to the rights guaranteed under the federal and State Constitutions for criminal proceedings. All proceedings shall be in accordance with applicable constitutional guarantees."

As explained, appellant's argument that he was committed without any trial lacks merit. We assume, however, that appellant had the rights to confront and cross-examine adverse witnesses and to present evidence on his own behalf, as a matter of due process (see *People v. Otto* (2001) 26 Cal.4th 200, 214 [commitment as sexually violent predator]; see also *Vitek v. Jones* (1980) 445 U.S. 480, 494-496 [100 S.Ct. 1254] [transfer of prisoner to mental hospital]; *Specht v. Patterson* (1967) 386 U.S. 605, 610-611 [87

---

[6]     Insofar as appellant may be claiming that he had a constitutional right to avoid self-incrimination, we reject the contention. (See *In re Scott* (2003) 29 Cal.4th 783, 815 [privilege against self-incrimination "does not extend to proceedings that are essentially civil in nature"]; *Allen v. Illinois*, *supra*, 478 U.S. at pp. 374-375 [Fourteenth Amendment's due process clause did not provide a prospective committee with a privilege against compulsory self-incrimination in commitment proceedings under the Illinois Sexually Dangerous Persons Act]; *Cramer v. Tyars* (1979) 23 Cal.3d 131, 137-139 [Fifth Amendment's privilege against self-incrimination did not apply in commitment hearings of mentally retarded persons and a prospective committee may be called as a witness and required to respond to nonincriminatory questioning].)

S.Ct. 1209] [commitment under Colorado's Sex Offenders Act]) and as a matter of statute (see § 1026.5, subd. (b)(7); see also U.S. Const., Amends. 5, 6, &14; *Rock v. Arkansas* (1987) 483 U.S. 44, 51 [107 S.Ct. 2704] [right to testify on defendant's own behalf]; *Crane v. Kentucky* (1986) 476 U.S. 683, 690 [106 S.Ct. 2142] [right to present defense]; Cal. Const., art. I, § 15).  Accordingly, the key question is whether the court was required to advise appellant regarding those rights and secure appellant's express, personal waiver of them.

Appellant asserts that "submission on the petition was tantamount to admission of the petition" and, therefore, required explicit advisement and express personal waiver of his rights to cross-examine witnesses and present evidence.  In this regard, appellant cites only criminal cases.[7]  (See *Bunnel v. Superior Court* (1975) 13 Cal.3d 592, 602-603 (*Bunnel*); *In re Tahl* (1969) 1 Cal.3d 122, 132 (*Tahl*); *Boykin, supra, at p.* 243.)

---

[7]     *Boykin v. Alabama* (1969) 395 U.S. 238 (89 S.Ct. 1709) (*Boykin*), recognized that, when a criminal defendant pleads guilty in a state criminal trial, he waives a number of federal constitutional rights, including the privilege against self-incrimination, the right to a jury trial, and the right to confront accusers.  (*Id*. at p. 243.)  *Boykin* made clear that courts could not "presume a waiver of these three important federal rights from a silent record."  (*Ibid*., fn. omitted.)  "In the wake of *Boykin*, [the California Supreme Court] held in *In re Tahl* (1969) 1 Cal.3d 122 . . . , that 'each of the three rights mentioned—self-incrimination, confrontation, and jury trial—must be specifically and expressly enumerated for the benefit of and waived by the accused *prior* to acceptance of his *guilty plea*.' (*Id*. at p. 132 . . . , italics added.)" (*People v. Mosby* (2004) 33 Cal.4th 353, 359.)  The California Supreme Court extended the *Boykin-Tahl* requirements of explicit advisement and waiver of constitutional rights to the submission of a case for decision based on the preliminary hearing transcript regardless whether the submission was tantamount to a guilty plea, i.e. a "slow plea." (See *People v. Levey* (1973) 8 Cal.3d 648, 650; *In re Mosley* (1970) 1 Cal.3d 913, 926, fn. 10; see also *People v. Wright* (1987) 43 Cal.3d 487, 491-494; *Bunnell v. Superior Court* (1975) 13 Cal.3d 592, 605.)  "A slow plea is defined as a submission of the guilt phase to the court on the basis of the preliminary hearing transcripts that is tantamount to a plea of guilty because guilt is apparent on the face of the transcripts and conviction is a foregone conclusion if no defense is offered. (*People v. Wright* (1987) 43 Cal.3d 487, 496 . . . .)" (*People v. Sanchez* (1995) 12 Cal.4th 1, 28, disapproved on another ground in *People v. Doolin*

16

Involuntary commitment proceedings under section 1026.5, subdivision (b), are not criminal proceedings. (See *People v. Dobson* (2008) 161 Cal.App.4th 1422, 1435; *People v. Givan* (2007) 156 Cal.App.4th 405, 409; *People v. Wilder* (1995) 33 Cal.App.4th 90, 99; *People v. Superior Court (Williams)* (1991) 233 Cal.App.3d 477, 485, 488 (*Williams*).) Their purpose is not punishment. (*People v. Givan*, *supra*, 156 Cal.App.4th at pp. 409-410; *People v. Angeletakis, supra,* 5 Cal.App.4th at p. 967; *Williams*, *supra*, 233 Cal.App.3d at p. 488.)

In civil cases, the right to cross-examine witnesses or to present evidence at trial is implicitly waived if the right is not timely asserted or exercised. (See *In re Marriage of S.* (1985) 171 Cal.App.3d 738, 745; cf. *Taylor v. Union Pac. R. Corp.* (1976) 16 Cal.3d 893, 900 ["it is well established that '. . . a party cannot without objection try his case before a court without a jury, lose it and then complain that it was not tried by jury. [Citation.]' [Citations.]".) Appellant has not directed us to any case holding that the requirements of *Boykin*/*Tahl* apply to involuntary commitment proceedings, much less to a submission of a commitment petition for decision by the court.

In *Conservatorship of John L.*, *supra*, 48 Cal.4th 131, John contended that he was deprived of "his state and federal constitutional due process rights" when the court held a conservatorship hearing "in his absence and ordered the conservatorship without any

_____

(2009) 45 Cal.4th 390, 421, fn. 22.) In *People v. Wright* (1987) 43 Cal.3d 487, the California Supreme Court held that the "requirement of a self-incrimination advisement and waiver is not constitutionally compelled for submissions that are not tantamount to a plea of guilty." (*Id*. at p. 495.) It stated: "*Boykin-Tahl* admonishments and waivers in such contested submissions are required only to effectuate the judicial policies of minimizing error, maximizing protection of defendants' constitutional rights, and eliminating the necessity of requiring trial and appellate courts to determine whether a submission is a slow plea. A trial court's failure to comply with this judicial rule of criminal procedure requires reversal only if it is reasonably probable a result more favorable to the defendant would have been reached if he had been properly advised. (Cal. Const., art. VI, § 13; *People v. Watson, supra,* 46 Cal.2d at p. 836 . . . .)" (*Ibid.*, fn. omitted.)

admissible evidence that he knowingly and intelligently waived his right to appear at the hearing." (*Id*. at pp. 141-142.) The California Supreme Court rejected this claim. (*Id*. at p. 156.) It cited with approval the case of *Conservatorship of Moore* (1986) 185 Cal.App.3d 718. (*Conservatorship of John L.*, *supra*, 48 Cal.4th at pp. 152-153.) In reaching its conclusion, it stated: "In a passage that speaks to the situation here, *Moore* emphasized the significance of a conservatee's representation by counsel in determining the validity of the conservatee's waiver of a hearing or trial: ' "When counsel is present, a voluntary and intelligent waiver of known rights may properly be inferred from the record, without a specific on-the-record showing as to each right." ' (*Moore*, *supra*, 185 Cal.App.3d at p. 733 . . . .)" (*Id*. at p. 153.) The Supreme Court also found that its conclusion was "consistent with decisions generally recognizing that, even though certain rights implicated in civil proceedings are substantial, they may be waived by an attorney with the client's express consent. [Citations.]" (*Id*. at p. 156.)

In the criminal context, California's view of *Boykin's* requirements has evolved.[8] It is now understood that the voluntariness of a defendant's plea is determined "by

---

[8]     In *People v. Howard* (1992) 1 Cal.4th 1132, a case involving a criminal defendant's admission of a prior conviction for purposes of sentence enhancement, the California Supreme Court recognized that "the overwhelming weight of authority no longer supports the proposition that the federal Constitution requires reversal when the trial court has failed to give explicit admonitions on each of the so-called *Boykin* rights." (*Id*. at p. 1175.) The court explained: "In the 22 years since *Tahl*, our interpretation of federal law in that opinion has not garnered significant support in the federal courts. Indeed, the high court has never read *Boykin* as requiring explicit admonitions on each of the three constitutional rights. Instead, the court has said that the standard for determining the validity of a guilty plea 'was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' (*North Carolina v. Alford* [(1970) 400 U.S. 25,] 31 . . . .) 'The new element added in *Boykin*' was not a requirement of explicit admonitions and waivers but rather 'the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.' (*Brady v. United States* [(1970) 397 U.S. 742,] 747-748, fn. 4 . . . .)" (*Id*. at p. 1177.) In *Howard*, the California Supreme

18

considering all of the relevant circumstances surrounding it. [Citations.]" (*Brady v. U.S.* (1970) 397 U.S. 742, 749 [90 S.Ct. 1463]; cf. *Johnson v. Zerbst* (1938) 304 U.S. 458, 464 [58 S.Ct. 1019] ["The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused"].) As stated by the United States Supreme Court: "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970) . . . ." (*Hill v. Lockhart* (1985) 474 U.S. 52, 56 [106 S.Ct. 366].) "[E]vidence of a defendant's prior experience with the criminal justice system [is] relevant to the question whether he

---

Court determined: "In the exercise of our supervisory powers, we shall continue to require that trial courts expressly advise defendants on the record of their *Boykin*/*Tahl* rights. However, errors in the articulation and waiver of those rights shall require the plea to be set aside only if the plea fails the federal test." (*Id.* at p. 1175.) "Under that test, a plea is valid if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances. (See *North Carolina v. Alford* (1971) 400 U.S. 25, 31 . . . ; *Brady v. United States* (1970) 397 U.S. 742, 747-748 . . . .)" (*Ibid.*) The court later observed: "Although we have not directly held the *Howard* totality-of-the-circumstances test would apply on direct appeal from a guilty plea to a substantive offense, our subsequent cases seem to have assumed it. [Citations.]" (*People v. Allen* (1999) 21 Cal.4th 424, 439, fn. 4.) More recently, the California Supreme Court has stated: "By adopting in *Howard* the federal constitutional test of whether under the totality of circumstances the defendant's admission is intelligent and voluntary, we rejected the rule that 'the absence of express admonitions and waivers requires reversal regardless of prejudice.' (*Howard, supra*, 1 Cal.4th at p. 1178 . . . .) In replacing the old rule, the focus was shifted from whether the defendant received express rights advisements, and expressly waived them, to whether the defendant's admission was intelligent and voluntary because it was given with an understanding of the rights waived." (*People v. Mosby, supra,* 33 Cal.4th at p. 361.) Thus, appellant's reliance on a rule of automatic reversal is misplaced since the cases he cites for that rule, *People v. Dakin* (1988) 200 Cal.App.3d 1026 and *People v. Levey* (1973) 8 Cal.3d 648, have been impliedly abrogated.

knowingly waived constitutional rights . . . ." (*Parke v. Raley* (1992) 506 U.S. 20, 37 [113 S.Ct. 517]; see *People v. Mosby, supra,* 33 Cal.4th at p. 365 [defendant voluntarily and intelligently admitted his prior conviction despite being advised of and having waived only his right to jury trial since his "prior conviction was based on a plea of guilty, at which he would have received *Boykin–Tahl* advisements"].)

The record of the involuntary commitment proceeding in this case reflects that appellant was represented by counsel and his counsel conferred with him regarding his wishes as to trial. Counsel informed the court that, about a week before the scheduled jury trial, appellant had told her that he did not want a jury trial and he was satisfied with the court reviewing the petition. Appellant, who was present, did not dispute the accuracy of those representations. Neither did appellant object to his counsel's subsequent submission of the petition for decision by the court.

Furthermore, the present proceeding to extend appellant's commitment pursuant to section 1026.5, subdivision (b), was not the first. Prior appellate decisions, of which we have taken judicial notice (see *ante*, fn. 3), indicate that in January 2011 (Case Number H036517) and in March 2009 (Case Number H034006), appellant had court trials where witnesses were called to testify. He challenged those earlier commitment orders on appeal because he was not tried by a jury.

Appellant's prior experience is relevant to whether he voluntary, knowingly, and intelligently agreed to an uncontested court trial based on documentary evidence and gave up his rights to cross-examine witnesses and present evidence. (Cf. *People v. Mosby*, *supra*, 33 Cal.4th at p. 365.) We think the only reasonable inference is that, at the time scheduled for jury trial, appellant knew that he did not have to submit the petition to the court for decision and he was entitled to have a jury or court trial where witnesses were called and his counsel had the opportunity for cross-examination and presenting evidence on his behalf. The prior commitment orders would have set his expectation as

20

to the outcome of an uncontested court trial.  Appellant's voluntary and intelligent waiver of known rights may properly be inferred.

In addition, even assuming arguendo that section 1026.5, subdivision (b)(7), required the court to explicitly advise appellant and secure his express, personal waiver of the rights to confront and cross-examine witnesses and to present evidence before accepting the submission, such statutory error must be regarded as harmless on the record before us.[9]  (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

DISPOSITION

The January 22, 2013 order of commitment is affirmed.

---

[9]      Our harmless error conclusion also applies to the court's failure to advise and obtain a personal waiver of any statutory privilege against self-incrimination.  It is clear to us that the submission of the matter to the court was "the voluntary expression of his own choice."  (*Brady v. U.S.*, *supra*, 397 U.S. at p. 748, fn. omitted.)  We find it unnecessary to resolve whether section 1026.5, subdivision (b)(7), created such a statutory privilege.  (See *People v. Lopez* (2006) 137 Cal.App.4th 1099, 1116 ["Legislature in enacting Penal Code section 1026.5(b)(7) and Welfare and Institutions Code section 1801.5 did not intend to require that persons subject to commitment under those provisions have the right not to testify"]; but see *People v. Haynie* (2004) 116 Cal.App.4th 1224, 1226 [§ 1026.5, subd. (b)(7)]; but cf. *Joshua D. v. Superior Court* (2007) 157 Cal.App.4th 549, 558 [Welf. & Inst. Code, § 1801.5]; *In re Luis C.* (2004) 116 Cal.App.4th 1397, 1403 [same].)  *Hudec v. Superior Court* (G047465), one of the cases relied upon by appellant, may no longer be cited because the California Supreme Court granted review (S213003, rev. granted on Oct. 2, 2013).  (See Cal. Rules of Court, rules 8.1105(e)(1) & 81115(a).)

21

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.

22